IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OSCAR ENRIQUE MEDINA PALACIN,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, CITIBANK, N.A.,<br><br>　　　　Defendants. | Case No.: 1:25-cv-04123<br><br><br>**DEMAND FOR JURY TRIAL** |

　　　　Plaintiff Oscar Enrique Medina Palacin brings this action on an individual basis, against Defendant Experian Information Solutions, Inc. ("Experian"), Defendant Trans Union, LLC, ("Trans Union"), (collectively, Experian and Trans Union are the "CRA Defendants") and Defendant Citibank, N.A., ("Citibank"), and states as follows:

## JURISDICTION AND VENUE

　　　　1.　　This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

　　　　2.　　Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

　　　　3.　　Plaintiff is a natural person residing in Portland, Oregon, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

　　　　4.　　Experian is a corporation with a principal place of business located at 475 Anton Boulevard Costa Mesa, California, and is authorized to do business in the State of New York, including within this District. Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

1

5. Trans Union is a corporation with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661, and is authorized to do business in the State of New York, including within this District. Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

6. Citibank is a national association bank with a principal place of business located at 388 Greenwich St, New York, NY 10013. Citibank is a "Furnisher" as defined in 12 CFR 1022.41.

## FACTUAL ALLEGATIONS

### Identity Theft

7. An unauthorized individual ("Fraudster") unlawfully used Plaintiff's SSN, to apply and open credit card accounts under Plaintiff's name, without his knowledge, consent or authorization.

8. The details of the credit card accounts, as later discovered by Plaintiff, are as follows:

   i. American Express
      - Account number: 3499932212797463
      - Date Opened: March 14, 2024
      - Balance: $4,198

   ii. TSC VISA/CBNA
      - Account number: 49856300010
      - Date Opened: March 14, 2024
      - Balance: $4,589

9. Plaintiff has never applied for, requested, nor received issuance of any of the aforementioned credit cards.

10.     Plaintiff has never held or maintained any account with American Express nor Citibank's TSC VISA / CBNA, nor conducted any transactions related to these accounts.

11.     At no point did Plaintiff authorize, consent, or provide any personal information to facilitate the opening, issuance, or use of these fraudulent credit card accounts.

**Plaintiff's Discovery of Identity Theft**

12.     On or about April 4, 2024, Plaintiff, who relatively recently entered the United States from Peru on a work visa, went to Chase Bank ("Chase") with the intent of opening his first personal bank account with Chase.

13.     After diligently providing the required information and submitting it to the bank personnel, Plaintiff was met with an unexpected and deeply distressing revelation: Plaintiff was informed that seven credit cards had already been linked to his SSN.

14.     The following accounts were linked to Plaintiff's SSN:

  i.    Barclays Bank Delaware

  ii.   CBNA (Citibank North America)

  iii.  SYNCB/Care Credit

  iv.   JPMCB Card Services

  v.    Capital One

  vi.   Wells Fargo Bank

  vii.  American Express (AMEX)

15.     Plaintiff was shocked and horrified, as he had never applied nor authorized any of these accounts.

16.     This moment marked the first realization that Plaintiff's identity had been compromised, leaving Plaintiff in a state of shock and concern for his financial future.

**Fraudulent Takeover of Plaintiff's Account with Defendants Experian and Trans Union**

17. On or about April 5, 2024, upon Plaintiff's discovery of his misused SSN, Plaintiff attempted to create an account with Defendant Experian to monitor his credit report.

18. However, to his shock, someone else had already opened a premium account in his name.

19. Determined to regain control over his identity, Plaintiff successfully recovered the account and immediately updated his contact information including his phone number and email address.

20. Despite Plaintiff's action, the Fraudster reclaimed control of the Experian account associated with Plaintiff, just days later.

21. Alarmed and feeling personally violated, Plaintiff began disputing the fraudulent activity directly with Defendant Experian, engaging in a prolonged effort to reestablish his rightful ownership of his credit file and identity.

22. Throughout this process, Plaintiff diligently provided all necessary documentation and correspondence to support his claim.

23. While working to regain access to his Experian account, Plaintiff received information from Defendant Experian that further confirmed the theft: the fraudster's phone number (661-607-3969) and two fraudulent addresses—9437 Charleville Blvd, Beverly Hills, CA 90212-3006, and 16830 Kingsbury St, Granada Hills, CA 91344-6411.

24. Plaintiff never lived in California.

25. This fraud was documented in Plaintiff's police report, filed on or about April 17, 2024.

26. Subsequently, the Fraudster fraudulently accessed and took over Plaintiff's Credit Karma.

27. When Plaintiff attempted to log in, he received an alarming notification stating that an account was already registered under his name, "Oscar Enrique", but was linked to an unfamiliar email address: "drapakom@gmail.com."

28. That email does not belong to Plaintiff, nor has he ever used it for any of his financial or credit-related activities.

29. Recognizing the seriousness of the identity theft and its potential financial consequences, Plaintiff immediately took action and disputed the unauthorized access with Credit Karma.

30. On or about May 17, 2024, Credit Karma acknowledged his dispute, initiated an investigation, and assigned Case #13443644.

31. As a result of Plaintiff's persistent efforts, Plaintiff was able to regain access to his file on Credit Karma.

**Plaintiff's Credit Files with non-party Equifax and Defendant Trans Union**

32. On or about May 22, 2024, Plaintiff obtained a copy of his Trans Union and non-party Equifax credit reports and discovered two unauthorized accounts fraudulently opened under his name:

   i. TSC Visa/CBNA
      - Opened: March 14, 2024
      - Balance: $4,332

   ii. American Express (AMEX)
      - Opened: May 14, 2024

- Balance: $4,198

33. Plaintiff carefully reviewed the details associated with the fraudulent accounts that had been unlawfully opened in his name. In doing so, Plaintiff identified addressed linked to these accounts he had never lived at, used or authorized.

34. Among these fraudulent addresses were:

    a. 9437 Charleville Blvd, Beverly Hills, CA 90212

    b. 27112 White Sage Ct, Granada Hills, CA 91344

**Plaintiff Disputes with Defendant Experian in April 2024**

70. Worried that the fraudulent account would negatively affect Plaintiff's credit standing on or a about April 5, 2024, Plaintiff disputed, via phone, the seven unauthorized accounts listed under Plaintiff's name.

71. Plaintiff submitted his documents to prove that he has no association with the reported accounts.

72. Sometime in April 2025, Defendant Experian received Plaintiff's disputes.

73. Upon information and belief, Defendant Experian sent Defendant Citibank an automated credit dispute verification ("ACDV") pursuant to Plaintiff's April 2024 dispute to Defendant Experian.

74. Upon information and belief, Defendant Citibank received Defendant Experian's ACDV and did not adequately investigate Plaintiff's dispute.

75. On or about April 8, 2024, in response to Plaintiff's disputes, Defendant Experian removed the fraudulent addresses but failed to remove any of the reported accounts.

76. That same day, Defendant Experian requested additional documents for Plaintiff's verification, which Plaintiff promptly responded by submitting the following:

   i.  FTC Identity Theft Affidavit and/or Police report

   ii.  Government issued ID

   iii.  SSN confirmation

   iv.  Proof of Plaintiff's address.

77. On or about April 26, 2024, following Plaintiff's persistent follow-ups with Defendant Experian, Experian removed the following fraudulent account:

   v.  Barclays Bank Delaware

   vi.  SYNCB/Care Credit

   vii.  JPMCB Card Services

78. However, Experian failed to remove the fraudulent CBNA account, which it claimed was still under investigation, and continued to report the following accounts as valid, despite Plaintiff's clear and compelling evidence of identity theft, and despite proffering no explanation for the differential treatment:

   viii.  TSC Visa/CBNA

     c. Opened: March 14, 2024

     d. Balance: $4,332

   ix.  American Express (AMEX)

     e. Opened: May 14, 2024

     f. Balance: $4,198

**Plaintiff Disputes with Defendant Trans Union in August 2024**

84. Determined to clear his own name, Plaintiff formally disputed the fraudulent account with Trans Union. On or about August 14, 2024, Plaintiff sent a fraud block and deletion request to Defendant Trans Union, demanding that the fraudulent accounts, unauthorized inquiries, and incorrect addresses be permanently removed.

85. Sometime in August 2024, Defendant Trans Union received Plaintiff's disputes and request that identity theft information be blocked from his credit file.

86. Upon information and belief, Defendant Trans Union sent Defendant Citibank an automated credit dispute verification ("ACDV") pursuant to Plaintiff's August 2024 dispute to Defendant Equifax.

87. Upon information and belief, Defendant Citibank received Defendant Trans Union's ACDV and did not adequately reinvestigate Plaintiff's dispute.

88. In blatant disregard of its legal obligations, on or about August 22, 2024, Trans Union declined Plaintiff's fraud block request and continued to report the TSC VISA/CBNA account as a closed account with a balance of $4,918.

89. On or about October 7, 2024, Plaintiff received his updated credit report from his Credit Karma account and observed that Defendant Trans Union removed the American Express account but continuedly reported the TSC VISA/CBNA account.

**Plaintiff's Disputes with Non-Parties Equifax, Capital One, Wells Fargo, Innovis, and Synchrony Bank**

90. By contrast, after Plaintiff disputed the fraudulent accounts with non-party Equifax, Equifax conducted an investigation of Plaintiff's credit file and removed the inaccurate and misreported information from his credit file.

91. On May 22, 2024, Plaintiff sent a formal request to Innovis, requesting a complete copy of his credit report to assess whether any fraudulent accounts were being reported. In response, on May 31, 2024, Innovis provided Plaintiff with a credit report that contained no accounts or payment history, confirming that Innovis had not reported the fraudulent accounts that appeared on other credit bureaus.

92. Plaintiff also directly contacted multiple financial institutions to dispute the fraudulent accounts that had been falsely attributed to him. As a result of his persistence and submission of compelling evidence, the following institutions acknowledged the fraud and confirmed the removal of the accounts:

  i. Capital One (April 18, 2024) – Confirmed that the account was fraudulently opened and accepted the dispute.

  ii. Wells Fargo (April 19, 2024) – Acknowledged the fraud and confirmed account closure.

  iii. Synchrony Bank (May 16, 2024) – Accepted Plaintiff's dispute and removed the fraudulent account.

**Plaintiff Disputes to Experian in August 2024**

93. On or about August 14, 2025, Plaintiff sent another dispute and block request to Experian.

94. Experian received Plaintiff's dispute.

95. On or about August 26, 2024, Experian told Plaintiff it was refusing to block the Fraudulent Citibank Account.

96. Experian responded that the Citibank account was still under investigation until September 20, 2024, despite Plaintiff providing overwhelming evidence of fraud.

97. As of on or about October 7, 2024, Defendant Experian was still reporting fraudulent Accounts.

98. Upon reviewing Plaintiff's Experian report via his Chase app, Plaintiff was shocked to find that Experian was still reporting the fraudulent TBS VISA/CBNA ("Citibank") account, which had now increased in balance to $4,918.

**Defendant Citibank's Unreasonable Dispute Investigation**

99. Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares Automated Consumer Dispute Verification ("ACDV") electronic forms that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

100. The data furnishers, like Defendant Citibank, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

101. Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

102. Upon information and belief, Defendant Citibank verified the disputed information as accurate in response to Defendant Experian's ACDV in April 2024.

103. Upon information and belief, Defendant Citibank verified the disputed information as accurate in response to Defendant Trans Union's ACDV in August 2024.

104. Citibank, acting unreasonably, failed to review all the relevant evidence submitted by Plaintiff and came to the wrong conclusion as a result.

**PLAINTIFF'S DAMAGES**

105. Plaintiff did exactly what he should have done upon realizing he was the victim of identity theft.

106. Plaintiff disputed directly with the CRA Defendants on multiple occasions and

explained that the Fraudulent Account was fraudulently opened and that he was the victim of identity theft.

107. Plaintiff filed a police report.

108. Plaintiff filed an FTC ID Theft Report.

109. Plaintiff immediately identified himself as an identity theft victim and requested from that the CRA Defendants block the account information that was the product of identity theft.

110. The CRA Defendants failed to block the Fraudulent Account that was the product identity theft despite Plaintiff's multiple disputes.

111. Instead, the CRA Defendants repeatedly disregarded Plaintiff's credible disputes.

112. Plaintiff reasonably believes that Defendant Citibank verified the Fraudulent Account as accurate to Defendants Experian, and Trans Union, inaccurately stating that Plaintiff was responsible for the Fraudulent Account.

113. As a direct result of Defendant Experian's ardent refusal to block the Fraudulent Account, which was a product of identity theft, Defendant Experian has continued to saddle Plaintiff with an TSC VISA/CBNA credit card with a balance of $4,754 account that was the product of identity theft.

114. As a direct result of Defendant Trans Union's ardent refusal to block the Fraudulent Account, which was a product of identity theft, Defendant Trans Union has continued to saddle Plaintiff with an open loan account that was the product of identity theft.

115. Further, as a direct result of Defendant Citibank's verification of the disputed Fraudulent Account to Defendants Experian, and Trans Union, Defendant Citibank has continued to saddle Plaintiff with an open loan account which was the product of identity theft.

116. Due to Defendants' ardent refusals to comply with their respective obligations

pursuant to the FCRA, Plaintiff was forced to obtain legal advice and counsel, for which he incurred attorney's fees.

117. Further, and due to Defendants' inexplicable refusal to block the Fraudulent Account from an identity theft victim's consumer file, Plaintiff expended countless hours disputing the same with Defendants Experian, Trans Union, and Citibank repeatedly, to no avail.

118. Defendants' conduct has caused Plaintiff extreme and ongoing stress and anxiety. Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate his disputes.

119. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

120. At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

121. Plaintiff's ongoing stress and anxiety over the situation, and after repeatedly receiving one non-responsive communication after another from Defendants, Plaintiff feels a surge of panic each time he receives another communication from Defendants. His ongoing stress and anxiety regarding the situation have affected her and her relationships negatively.

122. CRA Defendants Experian, and Trans Union have a long history of disregarding the credit reporting rights of identity theft victims under the FCRA. For example, in the very similar matter of April Hendrix vs. Equifax, et. al., (N.CM.D. C.A. No. 1-16-cv-201), an identity theft victim sued several CRAs, including CRA Defendants Equifax, Experian, and Trans Union, over their repeated wrongful removal of security freezes, release of his credit reports for

impermissible purposes, and refusal to properly reinvestigate disputed identity theft information on his credit reports.

123. The Hendrix suit put the CRA Defendants on notice several years ago that their respective policies and procedures for implementing security freezes and handling identity theft victims' requests and disputes were woefully inadequate.

124. The CRA Defendants have had years of notice in the form of federal lawsuits, despite it all, the CRA Defendants did not take any better steps to protect the Plaintiff here.

125. The respective internal policies and procedures of the CRA Defendants do not appear to place any value on its obligations under the FCRA to report credit entries accurately, to reinvestigate carefully when notified of consumer disputes, and to avoid giving third parties access to consumers' reports without authorization or permissible purpose. Nor do the CRA Defendants' respective policies and procedures respect their statutory duties to enforce or at minimum add security freezes and fraud alerts as requested by the consumer.

126. As a standard practice, the CRA Defendants do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the data furnishers, like Defendant Citibank here, despite numerous court decisions admonishing this practice. See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); Apodaca v. Discover Fin. Servs., 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); Gorman v.

Experian Info. Sols., Inc., 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

127. The CRA Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the CRA Defendants' violations of the FCRA are willful.

128. The CRA Defendants' policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers and led directly to the injuries of Plaintiff as described in this complaint.

129. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the credit card accounts that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent credit card account that was the product of identity theft.

130. On or about February 21, 2025, Plaintiff applied for a Citibank credit card. Defendant Experian published Plaintiff's credit report to Citibank in New York. Despite his responsible financial history, Plaintiff's application was wrongfully denied. The denial by Citibank, based in New York, cited Experian's report, which continued to falsely reflect the fraudulent, delinquent Citibank account, despite Plaintiff's multiple disputes and clear evidence of identity theft.

131. Moreover, on March 7, 2025, Plaintiff was denied an Apple Card from Goldman Sachs Bank, also based in New York, on the basis of a "Serious Delinquency" on his Trans Union report. The false Citibank account was the only serious delinquency on Plaintiff's Trans Union report, which was published to Goldman Sachs Bank in New York.

132. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendants.

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to**
**Assure Maximum Possible Accuracy**
**(Defendants Experian, and Trans Union)**

133. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

134. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

135. Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

136. The CRA Defendants' conduct, actions, and inactions were willful, rendering Defendants Experian, and Trans Union liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the CRA Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

137. Plaintiff is entitled to recover attorneys' fees and costs from the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Defendants Experian, and Trans Union)

138. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

139. Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

140. Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

141. The CRA Defendants' conduct, actions, and inactions were willful, rendering the CRA Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the CRA Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

142. Plaintiff is entitled to recover attorneys' fees and costs from the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## 15 U.S.C. § 1681c-2
## Failure to Block Identity Theft Information
## (Defendants Experian and Trans Union)

143. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

144. Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

145. Defendant Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

146. Plaintiff repeatedly submitted ample evidence of the fact that he was an identity theft victim. Plaintiff further supported the fact that he was an identity theft victim by providing to the CRA Defendants copies of the Police Report and FTC IDT Report.

147. The CRA Defendants should have blocked the identity theft information but failed to do so at every turn.

148. The CRA Defendants' conduct, actions, and inactions were willful, rendering the CRA Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the CRA Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

149. Plaintiff is entitled to recover attorneys' fees and costs from the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT IV
## 15 U.S.C. § 1681s-2b
## Failure to Conduct an Investigation of the Disputed Information and Review of all Relevant Information Provided by the Consumer
## (Defendant Citibank Only)

150. Plaintiff incorporates by reference all the above paragraphs of this Complaint as

though fully set forth herein at length.

151. Defendant Citibank violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same.

152. Defendant Citibank's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendant Citibank was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

153. Plaintiff is entitled to recover attorneys' fees and costs from Defendant Citibank in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief against Defendants:

(a) Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681;

(b) An award of actual, statutory, and punitive damages pursuant to 15 U.S.C. §§ 1681, et seq.;

(c) An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and § 1681o; and,

(d) Such other and further relief as the Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## **JURY DEMAND**

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 16th day of May 2025.

*/s/ Noah Kane*
Noah Kane, Bar # 6009682NY
**CONSUMER ATTORNEYS**
68-29 Main Street
Flushing, NY 11367
T: (518) 375-3963
F: (718) 247-8020
E: nkane@consumerattorneys.com

*Attorneys for Plaintiff*
*Oscar Enrique Medina Palacin*
